544 A.2d 538

Commonwealth of Pennsylvania, Department of Transportation, Plaintiff *v.* Manor Mines, Inc. and The Travelers Indemnity Company, Defendants.

Argued March 22, 1988, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*James W. Kutz,* Assistant Counsel, with him, *Robert J. Shea,* Assistant Counsel, *Kenneth Lee Sable,* Assistant Counsel, *John L. Heaton,* Chief Counsel, for plaintiff.

*Gregg M. Rosen, Rosen & Mahfood,* for defendants.

OPINION BY JUDGE COLINS, June 28, 1988:

Before this Court for disposition is a motion for post-trial relief filed by defendants, Manor Mines, Inc. (Manor Mines) and The Travelers Indemnity Company (Travelers), seeking, alternatively, a new trial or judgment in defendant's favor.

## HISTORY

This matter was initiated in this Court's original jurisdiction by the Pennsylvania Department of Transportation's (DOT) filing of a complaint on February 3, 1982, against Manor Mines and Travelers. In its complaint, DOT sought the recovery of sums due under a Heavy

Hauling Agreement (Agreement) executed between the parties on or about June 6, 1976.

Numerous pleadings were filed by the parties and substantial discovery was conducted. A non-jury trial on this matter before the trial court[1] commenced on June 15, 1987 and ended June 18, 1987. The parties filed a stipulation of facts and at the conclusion of the trial, submitted Proposed Findings of Fact and Conclusions of Law, as well as post-trial briefs. On November 19, 1987, the trial court issued a Memorandum Opinion entering judgment for DOT.

On December 14, 1987, Manor Mines and Travelers filed post-trial motions seeking a new trial and/or judgment in their favor.[2] Consequently, on December 21, 1987, this Court issued an Order vacating its Order of November 19, 1987, to the extent that the former entered final judgment in DOT's favor, and ordering that briefs be submitted by the parties with respect to the post-trial motions.

RELEVANT FACTS

The Memorandum Opinion issued by the trial court contains no specific findings of fact. However, the parties do agree that many facts relating to this matter are undisputed. In our capacity as factfinder, we set forth below, the relevant facts as derived from the stipulation

---

[1] We note that this matter, in the form of consideration of post-trial motions, is still before this Court in its original jurisdiction. Acting as the trial court, it is within our province to make findings of fact.

[2] The trial court granted an extension of time for the filing of post-trial motions beyond the 10 day limit mandated by Pa. R.C.P. No. 227.1(c). All post-trial motions are to be heard and decided by the trial judge unless he orders that the matter be heard by the court en banc. No more than three judges shall constitute the court en banc. See Pa. R.C.P. No. 227.2.

of facts entered. into by the parties, the record testimony, and the exhibits entered. into evidence.

Manor Mines operated an underground coal, mine facility, known as the Manor 8 facility, the portal for. which was located in Washington Township, Indiana County, Pennsylvania. In order, to transport the coal produced from the Manor 8 facility, Manor Mines hauled over Pennsylvania Legislative Route. 32074 (L.R. 32074), commencing at the portal on L.R. 32074 and heading in a northerly direction. The stretch of L.R. 32074 over which Manor Mines hauled this coal covered 3.71 miles, extending from Station 31100 through Station 226 + 86.[3]

On or about April 21, 1976, pursuant to an engineering study conducted by DOT, L.R. 32074 was posted with a ten ton weight restriction. On June 8, 1976, Manor Mines and DOT entered into the subject Agreement. Incident to this Agreement, DOT performed a preliminary inspection of the roadway in preparation for the posting of a surety bond by Travelers.[4]

Between June, 1976, and March 27, 1981, Manor Mines produced coal at its Manor 8 facility and transported that coal over L.R. 32074. From 1976 to the end of 1979, Manor Mines was billed annually for the cost of repairing L.R. 32074. These billings amounted to a total of approximately $8,500.00. In 1980 and 1981, DOT performed repairs for which Manor Mines has not maintained responsibility.[5]

---

[3] The entire length of L.R. 32074 spans Station 0.00 through 226 + 86, representing 4.71 miles. *See* Exhibits P-5 and P-1.

[4] Attached to the Agreement is a $74,000.00 surety bond, posted by Travelers, which is part and parcel of the Agreement.

[5] There are five separate dates of repair which are at issue in this litigation with cost of repairs totalling approximately $176,600.00

In September of 1981, after learning that Manor Mines had ceased its hauling operations on L.R. 32074, DOT performed a final inspection of the roadway. During this inspection, DOT noted all repairs necessary at the time of the final inspection which were not listed on the preliminary inspection. These repairs were performed by DOT's contractor and Manor Mines was billed for the cost of these repairs. Manor Mines refused to maintain responsibility for the repairs and this litigation ensued.

## ISSUES

The defendants contend that they are entitled to a new trial: 1) because the trial court erroneously failed to apply the canons of statutory construction to the Agreement and capriciously ignored the weight of the evidence resulting in an erroneous interpretation of the Agreement; 2) because of the variance between DOT's pleadings and proof; and 3) because the trial court excluded relevant evidence.

In addition, the defendants allege that they are entitled to judgment because DOT failed to adduce evidence to support the theory that it pled. Finally, defendants allege that the trial court erred in implying that DOT was entitled to an award of attorney's fees against Travelers. We shall address these issues in the order in which they were presented.

## INTERPRETATION OF THE AGREEMENT

A motion for a new trial will be granted only where there exists a manifest abuse of discretion or a clear error of law. *Ford Motor Company v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 107 Pa. Commonwealth Ct. 313, 528 A.2d 1002 (1987); *Chanda v. Commonwealth of Pennsylvania,* 86 Pa. Common-

wealth Ct. 532, 485 A.2d 867 (1984). Defendants contend that the trial court committed an error of law in interpreting the Agreement. Our review of the record indicates otherwise.

It is well-established that when interpreting a contract, a court must determine the intent of the parties. *Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973). Furthermore, when construing a contract, the entire contract should be considered and all of its provisions should be given effect. *Argeros & Company, Inc. v. Department of Transportation*, 67 Pa. Commonwealth Ct. 531, 437 A.2d 1065 (1982); *Department of Transportation v. Acchioni & Canuso, Inc.*, 14 Pa. Commonwealth Ct. 596, 324 A.2d 828 (1974). The contract must be construed according to the plain meaning of its language, *Argeros*, and where the words of a contract are clear and unambiguous, the intent of the parties may be ascertained solely from the express language of the instrument. *Avery v. Pennsylvania Labor Relations Board*, 97 Pa. Commonwealth Ct. 160, 509 A.2d 888 (1986).

The relevant portions of the Agreement, central to this dispute, are set forth below:

Second—The USER shall be liable and responsible for the cost of repairs to the roadway and its appurtenances on the said portion of State Highway from which the gross weight limitation is removed, to be determined as hereinafter provided.

Third—The parties hereto agree that, in order to determine the USER's responsibility under paragraph Second above, the condition of the base, surface, berms and drainage facilities on said portion of State Highway immediately prior to the effective date of this Agreement is as listed on a Memorandum, containing also a list of

needed repairs, if any, for which the USER shall not be liable or responsible, together with the cost thereof, attached hereto, marked Exhibit 'B' and made a part hereof.

Fourth—During the effective period of this Agreement, the COMMONWEALTH will, from time to time and at least annually, submit to the USER a written report setting forth in detail all repairs made during each preceding reporting period to the portion of the State Highway covered by the terms of this Agreement. Such report shall state the actual cost of the repairs, temporary and permanent, involved and shall be accompanied by an invoice showing the amount of such costs to be paid by the USER to the COMMONWEALTH within forty-five (45) days of its submission to the USER. The USER shall not be responsible for any items of repair or cost not set forth in said report and accompanying invoice.

Fifth—The COMMONWEALTH reserves the right, in its discretion, to maintain portions of the surfaced State Highway in a stabilized condition at the user's cost and expense until such times as permanent repairs can be made. The exercise of such right by the COMMONWEALTH shall not in any way release the USER from its liability under any terms of this agreement, nor shall the failure to file a report where no repairs have been made release the USER from such liability.

Sixth—Although the removal of the gross weight limitation from the portion of State Highway covered by the terms of this Agreement is primarily for the benefit of the USER, it is understood and agreed by the parties hereto that

all other persons shall also have the right to use said portion of State Highway without inference of any kind by the USER. However, nothing herein shall prevent the USER from entering into agreements or from otherwise seeking contribution from other users of said portion of State Highway, provided such usage by other users is not inconsistent with the terms of this Agreement.

Seventh—The USER shall have the right at any time to terminate its future obligations under the terms of this Agreement by submitting to the COMMONWEALTH a written notice of intent to terminate. As soon as possible after receipt of such notice, representatives of the COMMONWEALTH and of the USER shall make an inspection of the condition of the portion of the roadway covered by this Agreement. Within a period of one hundred twenty (120) days after completion of such inspection, which period may be extended by the COMMONWEALTH for a period not to exceed an additional sixty (60) days, the COMMONWEALTH shall submit to the USER a written report setting forth in detail all repairs made to the portion of the State Highway covered by the terms of this Agreement, which are attributable to the USER's overweight usage thereof during the period following the date of the last reporting period. Such report shall state the actual cost of the repairs involved and shall be accompanied by an invoice covering the amount of such costs to be paid by the USER to the COMMONWEALTH within forty-five (45) days of its submission to the USER. No items of repair or cost not set forth in said report and accompanying invoice shall be

the responsibility of the USER. The date of said inspection shall be the effective date of termination of the overweight usage of the portion of State Highway covered by the terms of this Agreement.

In its brief to this Court, defendants contend that paragraph Seventh of the Agreement provides that DOT will bill the user only for the repairs which are "attributable" to the user. Therefore, defendants argue that DOT was required to prove that the damages for which it was seeking compensation were actually caused by the defendants. In its Memorandum Opinion, the trial court held otherwise. It noted:

The clear language of the agreement provides that the user (Manor Mines) shall be responsible for the costs of repairing the roadway. The agreement does not state that the user is to be responsible only for damages that it causes. In fact, the agreement sets forth a method of determining costs for *any* damages that occur between the preliminary and final inspections, regardless of whether or not those damages were caused by Manor Mines.

The sixth paragraph of the agreement states that 'nothing herein shall prevent the USER from entering into agreements or otherwise seeking contribution from other users. . . .' This provision indicates that the parties were aware that other persons would be using and might be causing damage to L.R. 32074, for which Manor Mines could be held responsible. The agreement gives Manor Mines the right to seek contribution from other users. Manor Mines therefore is responsible for costs of all repairs regardless of whether it caused the damages, as it was given the opportunity to lessen its own costs by seeking contribution from other users.

Applying the rules of contract construction set forth above, we must conclude that the trial court applied the only reasonable interpretation of the Agreement. Considering the entirety of the contract, reading all of the paragraphs together, the meaning of the Agreement becomes clear. Paragraph Third of the Agreement called for DOT's preparation of a memorandum at the time of execution of the Agreement, which would contain a list of all needed repairs for which Manor Mines would not be held responsible. Paragraph Seventh provided that at the time of termination of the Agreement, DOT would execute a final inspection of the roadway and bill Manor Mines for the actual cost of repairs attributable to its overweight usage of the road. In addition, paragraph Fifth of the Agreement provided that DOT would maintain portions of the roadway in a stabilized condition at the expense of Manor Mines until such time as permanent repairs could be made. These repairs were to keep the road in suitable condition for use by the general public during the course of the Agreement.

Essentially, the Agreement, when read as a whole, provides that Manor Mines will be responsible for two types of damages that arise between the preliminary and final inspections conducted by DOT. The Agreement is not capable of two different constructions, as the defendants contend. Therefore, the trial court properly concluded that causation need not be shown by DOT.[6]

---

[6] Defendants further contend that because the Agreement was ambiguous, the trial court should have examined extrinsic evidence to determine the intent of the parties. *See Department of Transportation v. Semanderes,* 109 Pa. Commonwealth Ct. 505, 531 A.2d 815 (1987). Because we have concluded that the Agreement is not ambiguous, we reject defendants' contention as meritless.

### Variance Between Pleadings and Proof

Defendants contend that DOT's pleadings were based upon a single theory of recovery—causation. Noting that DOT's proof consisted of nothing more than proof relating to absolute liability, defendants contend that DOT's proof thereby failed to conform to its pleading. Therefore, defendants request that a new trial be granted.

Our review of the pleadings in this matter indicates that DOT, in its original Complaint, intended to seek damages regardless of causation. In its Amended Complaint, DOT amended paragraph 7 of its original Complaint to include a theory of causation. This Amended Complaint incorporated by reference paragraph 3 of the original Complaint, which sought damages regardless of causation.

It is well-established that the pleadings serve the purpose of putting an opponent on notice as to the issues which should be addressed. We cannot conclude, as defendants would have us, that they were unaware of the issues which they had to meet. The pleadings were sufficient to put the defendants on notice as to all issues.[7]

---

[7] Because we conclude that defendants were on notice as to all possible theories of recovery, we reject the contention that DOT should be equitably estopped from pleading a theory of absolute liability. Defendants contend that DOT's "misleading" pleading had the effect of depriving the defendants of an opportunity to confer with members of Manor Mines' management who had since died. Defendants, therefore, claim incurable prejudice by virtue of DOT's pleading and request that judgment be entered in their favor or, in the alternative, that a new trial be granted. Because we have concluded that DOT's pleadings were not misleading and did put the defendants on notice of all issues, we decline to rule in favor of defendants.

## Exclusion of Evidence

Defendants request the grant of a new trial based upon the trial court's exclusion of the testimony of their expert witness as to causation. The trial court ruled that the testimony of the expert witness with respect to causation was irrelevant. We must agree.

At trial, DOT requested an offer of proof as to the testimony of the expert witness. Defendants' counsel stated that the expert was going to express an opinion as to what caused the damage on the roadway. The trial court sustained the objection of DOT as to the admissibility of the evidence on the basis of relevance. As discussed earlier, the Agreement in this matter did not require that DOT show causation. Therefore, the testimony was clearly irrelevant and was properly ruled inadmissible by the trial judge.

## Judgment Notwithstanding the Verdict

Defendants request that judgment be entered in its favor because DOT failed to prove the theory that it pled. This is based upon defendants' contention that DOT pled only a theory of causation at trial. Because we have concluded otherwise, we fail to enter judgment in favor of defendants.

## Attorney's Fees

Defendants' final contention is that the trial court committed an error of law in granting attorney's fees to DOT. As a general rule, attorney's fees are not recoverable as an item of damage. *Felte.* However, in the present matter, the parties executed a performance bond, wherein Travelers agreed to be liable for the amount of the bond plus five per cent attorney's fees added for collection. Defendants contend that the attorney's fee provision does not become applicable ex-

cept in the case where a judgment is confessed. Our reading of the pertinent provision of the performance bond indicates otherwise. The relevant language of the bond reads:

> PROVIDED, FURTHER, that in case of default of PRINCIPAL, in any respect, action on this Bond may be begun forthwith, and PRINCIPAL and SURETY, jointly and severally do hereby authorize and empower any attorney of any Court of record in Pennsylvania or elsewhere, to appear for and to enter judgment against them, jointly and severally, for the aforementioned sum, with or without defalcation, with costs of suit, release of errors, without stay of execution and with 5% attorney's fees added for collection. . . .

There is no question that Manor Mines has refused to pay monies due for repairs made by DOT. In order to obtain payment, DOT will eventually have a judgment entered against the defendants. It is immaterial whether this judgment is obtained by confession or through litigation. The purpose of the Performance Bond is to impose on the surety, here, Travelers, the responsibility of making payment to DOT in case of default by the principal. We must conclude that the trial court committed no error in awarding attorney's fees to DOT.

## CONCLUSION

Having concluded that defendants' allegations of error by the trial court are meritless, we decline to grant defendants' motion for a new trial. In addition, we decline to render judgment in favor of the defendants and uphold the trial court's award of attorney's fees to DOT pursuant to the Performance Bond.

Accordingly, defendants' motion for post-trial relief is denied.

## ORDER

AND NOW, this 28th day of June, 1988, the motion for post-trial relief filed by Manor Mines, Inc. and The Travelers Indemnity Company, is hereby denied.

Final judgment is entered in favor of the Department of Transportation in the amount of $178,169.97. The Travelers Indemnity Company shall be jointly and severally liable for up to $74,000 of this amount pursuant to the performance bond issued. The Department of Transportation is also entitled to five per cent (5%) attorney's fees based upon the amount of the bond.

## ORDER

AND NOW, this 3rd day of August, 1988, the Department of Transportation's Motion for Clarification of Order of Court is granted. The Order of this Court filed June 28, 1988 in the above captioned matter is hereby amended to read:

AND NOW, this 28th day of June, 1988, the motion for post-trial relief filed by Manor Mines, Inc. and The Travelers Indemnity Company, is hereby denied.

Final judgment is entered in favor of the Department of Transportation in the amount of $178,169.97, plus pre-judgment interest in the amount of $68,586.35. The Travelers Indemnity Company shall be jointly and severally liable for up to $74,000 of this amount pursuant to the performance bond issued. The Department of Transportation is also entitled to five per cent (5%) attorney's fees based upon the amount of the bond.