# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaime Nardo,                          :
                                      :
            Appellant                 :
                                      :
      v.                              :  No. 2266 C.D. 2015
                                      :
City of Lebanon                       :  Argued: March 7, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED: April 6, 2016**


Jaime Nardo appeals from the Order of the Court of Common Pleas of Lebanon County (common pleas) granting summary judgment to the City of Lebanon (City) based on governmental immunity under the act popularly known as the Political Subdivision Tort Claims Act[1] (Tort Claims Act). On appeal, Nardo argues that common pleas erred by: (1) refusing to consider Nardo's allegation that the City's property at issue was a dangerous condition because of its defective design; and (2) improperly granting summary judgment where it imposed a higher burden on Nardo than required by the standard for summary judgment, record evidence exists that demonstrates genuine issues of material fact, and summary judgment was premature. Discerning no error, we affirm.

---

[1] 42 Pa. C.S. §§ 8541-8542.

Nardo filed a negligence action (Complaint) against the City alleging that he was standing next to a City-owned pool (Pool) when he slipped and fell, his big toe caught in a scum gutter, and, as a result, he suffered, *inter alia*, a broken big toe and severe cuts to that toe. (Compl. ¶¶ 8, 12, R.R. at 9a, 11a.) Nardo averred that the scum gutter was broken and in an unsafe condition, or presented a dangerous condition that the City knew of or should have known of. (Compl. ¶¶ 9-11, R.R. at 9a-11a.) Specifically, Nardo contended that the City was negligent in: (1) causing or permitting the scum gutter to remain significantly broken posing an unreasonable risk of injury; (2) causing or permitting the scum gutter to remain significantly broken when it knew or should have known that the broken gutter posed a hazard to those around the Pool; (3) failing to make a reasonable inspection of the Pool, which would have revealed the existence of the broken scum gutter, and allowing that dangerous condition to remain; (4) failing to ensure that the scum gutter "was maintained in a safe condition to prevent injury"; (5) failing to post a warning or other device warning people of the dangerous condition; (6) failing to remedy the broken scum gutter to avoid injury; and (7) "failing to maintain the [scum] gutter in a reasonably safe condition" to prevent slipping and falling, as occurred in this case. (Compl. ¶¶ 10-11, R.R. at 9a-11a.)

The City filed an Answer with New Matter, in which it asserted, *inter alia*, governmental immunity under the Tort Claims Act. (New Matter ¶¶ 1-2, 6, R.R. at 20a.) Nardo replied to the New Matter, asserting that, while the Tort Claims Act applied, it did not limit Nardo's claim because his "injuries were caused by a dangerous condition to property that [the City] owned, possessed, controlled and/or maintained." (Response to New Matter ¶¶ 1, 6, R.R. at 25a-26a.) Discovery ensued and depositions were taken of, *inter alia*, Nardo, two lifeguards who were

2

on duty the day of the incident, and the City employee who repaired the scum gutter the day after the incident. The City filed its motion for summary judgment (Motion) on June 1, 2015, to which Nardo responded. In his response to the Motion, Nardo newly asserted that the *design* of the scum gutter was defective rendering it a dangerous condition that caused his injuries. (Response to Motion ¶¶ 7, 11, 30, 33-34, R.R. at 144a, 146a; Brief in Opposition to Motion at 4-8, R.R. at 153a-57a.)

After hearing oral argument, common pleas first concluded that Nardo could not rely on a claim of defective design because that claim had not been raised in his Complaint, but was asserted for the first time in his response to the Motion. Common pleas held that Nardo had consistently asserted that the scum gutter was broken *prior* to his fall and the City was negligent in maintaining the Pool area, but he had not previously averred that there was a defect in the scum gutter's design. As there were no facts in the record regarding the after-asserted design defect claim, common pleas would not consider that allegation. Reading the real property exception of Section 8542(b)(3) of the Tort Claims Act, 42 Pa. C.S. § 8542(b)(3), *in pari materia* with the sidewalk exception (Section 8542(b)(7)), common pleas granted summary judgment on the basis that the real property exception did not apply. Common pleas stated that under these exceptions, the injury must be caused by the defect in the land itself rather than the action of a third party, and the depositions of the Pool lifeguards indicated that: the Pool area is routinely checked every morning before the Pool opens and throughout the day; if an area is deemed a risk, a lifeguard chair or cones were used to warn people to avoid the area, and the property manager would be notified; and to the best of their knowledge, the scum gutter was not broken prior to Nardo's fall. Common pleas further observed

3

that Nardo acknowledged that he did not notice whether the scum gutter was broken before he fell. Based on this evidence, common pleas found that Nardo had not supported his allegation that the scum gutter was broken before he fell and caused his injuries. Therefore, common pleas concluded that Nardo could not establish that his injuries were caused by a defect in the City's real property, i.e., a broken scum gutter, and it granted the Motion. Nardo now appeals to this Court.[2]

When reviewing the grant of summary judgment, we apply the following standards. "Summary [j]udgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Pritts v. Department of Transportation, 969 A.2d 1, 3 (Pa. Cmwlth. 2009). "To successfully challenge a motion for summary judgment, a party must show through depositions, interrogatories, admissions or affidavits that there are genuine issues of material fact to present at trial." Id. Stated differently, the "non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." Ertel v. Patriot-News Co., 674 A.2d 1038, 1042 (Pa. 1996). "Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. When reviewing the grant of summary judgment, this Court "must examine the record in a light most favorable to the non-moving party, accepting as true all well-pleaded facts and reasonable inferences" drawn from those facts. Irish v. Lehigh County Housing Authority, 751 A.2d 1201, 1203 n.4 (Pa. Cmwlth. 2000).

---

[2] Our review of an order granting summary judgment is limited to determining whether common pleas erred as a matter of law or abused its discretion. Irish v. Lehigh County Housing Authority, 751 A.2d 1201, 1203 n.4 (Pa. Cmwlth. 2000).

At issue here is common pleas' application of the Tort Claims Act to grant summary judgment in the City's favor. The Tort Claims Act provides local agencies governmental immunity from liability for any damages they cause to a person or property. 42 Pa. C.S. § 8541. Under Section 8542(a), a local agency shall be liable for injuries to a person or property if: (1) the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person without immunity under Section 8541; *and* (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). 42 Pa. C.S. § 8542(a). At issue here is the real property exception in Section 8542(b) providing, in relevant part:

> **(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
> . . . .
> *(3) Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

42 Pa. C.S. § 8542(b)(3). This exception, like the others, is to be narrowly construed. Wilson v. Norristown Area School District, 783 A.2d 871, 875 (Pa. Cmwlth. 2001).

Nardo first argues that common pleas erred by finding that Nardo failed to plead a claim based on the defective design of the scum gutter and that, in making this claim, Nardo was alleging facts not of record to defend against the Motion where the City did not ask for a more specific pleading, did not formally object or raise a defense to the asserted design defect claim, and has not alleged that it would

5

be prejudiced by having to address this claim. Nardo asserts that his pleadings, which aver that he was injured by a dangerous condition on the City's property and that the scum gutter was hazardous, are broad enough to encompass a claim for a dangerous condition based on a defective design. He maintains that he is permitted to allege alternate theories, and may proceed on an alternate theory if discovery provides factual support for such theory so long as the other side is given sufficient notice of the theory. Department of Transportation v. Manor Mines, Inc., 565 A.2d 428, 431 (Pa. 1989); Pennsylvania Rule of Civil Procedure 1020(c), Pa. R.C.P. No. 1020(c) (causes of action may be pleaded in the alternative). Nardo further asserts that he was not adding a new claim, but merely amplifying his existing general claim that the scum gutter was hazardous, as permitted by Connor v. Allegheny General Hospital, 461 A.2d 600, 602 (Pa. 1983) (stating "if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the Statute of Limitations has already run.") (emphasis omitted).

The City responds that common pleas correctly did not consider the design defect claim because it was not included in the Complaint and was not raised until Nardo's response to the Motion, seven years after the incident and five years after the statute of limitations had run. According to the City, the Complaint alleged that Nardo was injured as a result of a dangerous condition that was caused by the City's failure to maintain and/or repair the broken scum gutter or warn its patrons of the broken scum gutter. The City argues that Manor Mines and Connor, are distinguishable because, in those cases, the plaintiffs were not attempting to add a cause of action after the statute of limitations had run but relied on allegations either already expressly contained in the complaint or generically included therein.

6

After reviewing the Complaint and the precedent, we conclude that common pleas did not err. Our Supreme Court stated, in Aland v. P–G Publishing, 10 A.2d 5, 7 (Pa. 1940), that "[d]espite the increasing informality of modern practice, there has been no substantial departure from the salutary rule that pleadings and proof must conform sufficiently to enable a defendant to meet at trial the same cause of action disclosed by the statement of claim." However, this rule cannot be applied to limit a plaintiff from choosing to prove only one of two alternate theories of liability *if the defendant has sufficient notice of both*. Manor Mines, 565 A.2d at 431; Pa. R.C.P. No. 1020(c).

Nardo's reliance on Manor Mines and Connor to support his argument that he could add the defective design claim in response to the Motion is misplaced because these cases are distinguishable. In Manor Mines, DOT's *initial* complaint alleged that it was entitled to recover contract damages based on *strict liability*. Manor Mines, 565 A.2d at 431. DOT subsequently amended that complaint, after Manor Mines submitted new matter, to add a claim based on liability for causing particular damage to the road in question and also *reasserted* the *strict liability* theory. Id. This Court granted relief based on *strict liability*, and Manor Mines appealed arguing that DOT had waived this theory by making certain admissions upon which Manor Mines relied to its detriment. The Supreme Court affirmed, holding, *inter alia*, that strict liability had always been an asserted theory in the contract action and Manor Mines had sufficient notice to address either theory and conduct discovery thereon. Id. at 431-32. In Connor, the Supreme Court held that it was error not to allow amendment to the complaint in a medical malpractice action and to grant summary judgment because the asserted amendment, which occurred prior to trial, did not change the cause of action, but amplified one of the

7

allegations of the original complaint, which included a general claim that the defendants were negligent "in otherwise failing to use due care and caution under the circumstances" and that due care in performing a barium enema could include improper delay of necessary care. Connor, 461 A.2d at 602-03.

In both Connor and Manor Mines, the *initial* complaints contained the theory subsequently asserted or a general allegation of negligence against the defendants, thereby making those theories and allegations part of the pleadings and placing the defendants on notice that they would have to address and conduct discovery thereon. Nardo's defective design claim was not included in his Complaint, but asserted only in his response to the Motion. Unlike the initial complaint in Connor, which included a general allegation of negligence against the defendants upon which the plaintiff later expanded, Nardo did not plead a general allegation of negligence against the City, but was very specific in his averments regarding the nature of the City's alleged negligence. Thus, the addition of the defective design claim was not amplifying any existing pleading, but adding a new basis for recovery after the statute of limitations had run.

Moreover, "[t]o successfully challenge a motion for summary judgment, [Nardo had to] show through depositions, interrogatories, admissions or affidavits that there are genuine issues of material fact to present at trial." Pritts, 969 A.2d at 3. Because the design defect claim was not raised previously, it was not addressed in any of the materials elicited during discovery. Thus, there were no facts in the record that supported Nardo's new assertion of defective design for common pleas to consider in ruling on the Motion.

Nardo next argues that common pleas committed errors in granting the Motion. First, he asserts that common pleas applied the wrong standard for

8

summary judgment by essentially requiring him to prove that his injury was caused by a defect in the City's real property. While this would be Nardo's burden of proof at trial, it was not his burden at this stage of the proceedings. Instead, Nardo contends, that *the City* had to establish that there were no genuine issues of material fact, and common pleas had to resolve all doubts and all reasonable inferences from the evidence, in Nardo's favor. Nardo points to his deposition testimony that his "toe got caught in the gutter . . . that was, like, cracked open, so," and to Lifeguard Nicole Miller's deposition testimony that her report on the day of the injury indicated that a broken gutter cut Nardo's foot. (Nardo's Dep. at 19-20, R.R. at 90a; Miller's Dep. at 13-16, R.R. at 60a-61a.) This evidence, according to Nardo, would support a factual finding, or at least the conflicting inference, that the scum gutter was broken prior to Nardo's fall and precludes summary judgment. Finally, Nardo argues that summary judgment here was premature because there was no indication that discovery was closed, there were no expert reports submitted, and the City did not explain why additional discovery or expert reports could not establish the requisite dangerous condition created by the alleged defect of the City's property.[3]

The City, for its part, asserts that Nardo's issues related to applying the wrong standard and the timing of the Motion are waived because they were not raised in Nardo's Concise Statement of Errors Complained Of filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P.

---

[3] Nardo also argues that, per <u>Hanna v. West Shore School District</u>, 717 A.2d 626, 629 (Pa. Cmwlth. 1998), the real property exception and sidewalk exceptions are no longer to be read *in pari materia*. Nardo is correct and, therefore, common pleas should not have considered these two exceptions together. However, while common pleas indicated that it was reading the two together, it did not rely on the "notice" provision of the sidewalk exception to grant summary judgment. Accordingly, any error was harmless.

1925(b) (1925(b) Statement). Even if not waived, the City argues that common pleas did not misapply the summary judgment standard but held that Nardo could not establish that the gutter caused him to fall or that the gutter was broken prior to his fall and the Motion was timely filed because, *inter alia*, all of the written discovery had been conducted and, in fact, it had been almost a year since the last deposition had been taken when the City filed the Motion. Moreover, the City asserts that Nardo would not be entitled to recover under common law, making *any* exception inapplicable, because a common law negligence claim would require him to prove that the City, the possessor of the land, knew, or by the exercise of reasonable care should have known, of the danger. Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983); Restatement (Second) of Torts § 343 (1965). According to the City, Nardo did not establish, based on the evidence presented, that the City or any of its employees were aware of the alleged dangerous condition prior to the accident or that the City did not act with reasonable care.

Nardo's 1925(b) Statement asserted that common pleas erred in holding as a matter of law that Nardo's injury was not caused by a defect in the City's property and granting summary judgment because: (1) "it refused to consider [Nardo's] allegation that the dangerous condition . . . was caused by a design defect"; and (2) "material issues of fact remain regarding whether a defect existed in [the City's] property and whether the defect caused [Nardo's] injuries." (1925(b) Statement at 1-2, R.R. at 180a-81a.) Pursuant to Rule 1925(b)(4)(v), "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein . . . ." Pa. R.A.P. 1925(b)(4)(v). We conclude that the issues the City asserts were waived constitute "subsidiary issues [that are] contained" within the issues identified in Nardo's 1925(b) Statement and, therefore, they are not waived.

10

However, common pleas did not misapply the summary judgment standard, and the Motion was not untimely. First, common pleas concluded, essentially, that Nardo did not adduce sufficient evidence to support a finding that a dangerous condition of the City's property existed at the time of his fall that caused his injuries. This is what the non-moving party has to do in order to survive summary judgment, Ertel, 674 A.2d at 1042; Pritts, 969 A.2d at 3, and Nardo misunderstands the burden on summary judgment. Second, as pointed out by the City, it had been almost a year since the last deposition was taken and there was no indication that further discovery was going to occur when it filed its Motion. The Motion was filed "after the completion of discovery relevant to the motion, including the production of expert reports," and included an assertion that Nardo, "who [bore] the burden of proof at trial ha[d] failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pennsylvania Rule of Civil Procedure 1035.2(2), Pa. R.C.P. No. 1035.2(2). Accordingly, the Motion was not premature.

This leaves Nardo's contention that summary judgment was not appropriate because there are outstanding genuine issues of a material fact. Although Nardo is correct that, in summary judgment proceedings, we must view the record in the light most favorable to the non-moving party, Irish, 751 A.2d at 1203 n.4, Nardo had to "show through depositions, interrogatories, admissions or affidavits that there are genuine issues of material fact to present at trial," Pritts, 969 A.2d at 3. To establish that a genuine issue of material fact existed regarding whether the scum gutter was broken prior to his fall, making it a dangerous condition of the City's property, Nardo relies on his deposition testimony indicating that his "toe got caught in the gutter . . . that was, like, cracked open, so" and to Lifeguard

11

Nicole Miller's deposition testimony that her report on the day of the injury indicated that a broken gutter cut Nardo's foot. (Miller's Dep. at 13-16, R.R. at 60a-61a; Nardo's Dep. at 19-20, R.R. at 90a.) However, this evidence does not provide any insight into *when* the gutter was broken and, thus, would not be "sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." Ertel, 674 A.2d at 1042. Nardo did not recall seeing whether the scum gutter was broken prior to his fall. (Nardo's Dep. at 22, R.R. at 91a.) The deposition testimony of the lifeguards indicates that the lifeguards inspect the Pool and Pool deck daily to identify dangers and, if found, they block the area and contact the property manager to make the necessary repairs. (Miller's Dep. at 11-12, 18-19, R.R. at 60a, 62a; Dubble's Dep. at 17-19, R.R. at 77a-78a.) There was no evidence that this area was blocked off on the day of the incident or that there had ever been a situation where there was a broken scum gutter at the Pool, and the City's maintenance person's deposition testimony indicated that the only time he ever repaired a scum gutter was the day after Nardo's slip and fall. (Miller's Dep. at 15, 18-19, R.R. at 61a-62a; Dubble's Dep. at 14-15, 17-19, R.R. at 77a-78a; Kleinfelter's Dep. at 19, R.R. at 128a.) Therefore, there was not any genuine issue of material fact regarding whether there was a dangerous condition of the City's property that would preclude common pleas from granting summary judgment based on the City's assertion of immunity under the Tort Claims Act.[4]

---

[4] Because of resolution of this issue, we need not address the City's assertion that it was entitled to summary judgment because Nardo did not establish that he would have had a common law negligence claim due to the City's lack of notice of the alleged dangerous condition.

12

Accordingly, we affirm common pleas' Order granting the Motion.


_____

**RENÉE COHN JUBELIRER, Judge**

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaime Nardo,                          :
                                      :
              Appellant               :
                                      :
        v.                            :    No. 2266 C.D. 2015
                                      :
City of Lebanon                       :

# **O R D E R**

   **NOW**, April 6, 2016, the Order of the Court of Common Pleas of Lebanon County, entered in the above-captioned matter, is hereby **AFFIRMED**.


                              _____
                              **RENÉE COHN JUBELIRER, Judge**