Fidelity-Philadelphia Trust Company *v.*
Philadelphia Transportation
Company, Appellant.

542

Argued April 18, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

 

*Hamilton C. Connor, Jr.,* with him *Peter Platten, Allan F. Ayers, Jr.,* and *Ballard, Spahr, Andrews & Ingersoll,* and *Hodges, Reavis, McGrath & Downey,* of the New York Bar, for appellant.

*Ernest R. von Starck,* with him *Donald A. Scott,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE COHEN, July 18, 1961:

Fidelity-Philadelphia Trust Company (Trustee), appellee, brought this action in assumpsit in its capacity as trustee of the mortgage bondholders under a Trust Indenture securing the Consolidated Mortgage 3%-6% bond of Philadelphia Transportation Company (PTC), the defendant-appellant. Under this Indenture, PTC was to pay a fixed 3% interest per annum and up to 3% additional income-interest to the extent that "net income," as defined in the Indenture, was sufficient.

Under the Indenture the Board of Directors of PTC was to apply "accepted principles of accounting" to determine gross income and to make deductions for such items as depreciation and retirement "in accordance with sound accounting practice". The proper interpretation and application of these terms, contained in Article V, Section 2 of the Indenture, represents the major problem in this appeal.

The Trustee attacks PTC's determination that there was no net income for the years 1957 and 1958 and

therefore that there was no 3% income-interest available for both of those years.[1] The Trustee claims that these results were arrived at by accounting methods which fall below the standards spelled out in the Indenture. Specifically, the Trustee first claims that extraordinary charges which were allocated by PTC over the years 1956-1959 to the reserve for track depreciation should have been made in full by the end of 1956 by the application of "sound accounting practice," since the PTC had reason to know by the end of 1956 that its mass conversion program (from rail to bus) would render the existing track obsolete. Therefore, the Trustee claims that the charge to depreciation reserve should have been made when the loss occurred sometime before the end of 1956.

Secondly, the Trustee claims that PTC's treatment of the amortization of franchise paving costs was not in accordance with "sound accounting practice" because the paving, which had been eliminated from the rate base in 1953, did not contribute to income during the years in question. The third item involved in the dispute over the accounting methods employed by PTC concerns the treatment of repaving costs owed to the City of Philadelphia in 1957, which costs the PTC deducted completely in 1957 although it was permitted by the Pennsylvania Public Utility Commission (Pa. PUC) to reflect the repaving costs in the rate base for several years thereafter.

The lower court rendered an order on May 9, 1960, finding for plaintiff-Trustee on all of its claims and awarded a total of $1,420,242 with interest to represent the bond income-interest not paid in 1957 and 1958 and an additional $127,507 for costs. PTC appeals from the judgment of the court below.

---

[1] The net loss of PTC in 1957 was *$159,210* and in 1958 was *$115,746.*

Before discussion of these three accounting problems it is necessary to dispose of PTC's argument that the lower court erred in not adopting the Pa. PUC's approval of PTC's accounting methods. Three months after this suit was started, PTC instituted proceedings with the Pa. PUC for the sole purpose of obtaining retroactive approval of the PTC's accounting practices. The Pa. PUC approved the PTC methods of accounting but limited its finding to a mere permissive order, apparently recognizing that the Pa. PUC's authority in the public interest to promulgate rules of accounting does not extend to issues involved in a private contract. Therefore, for purposes of determining the rights of these parties under the Indenture, the Pa. PUC order is not controlling.

## I. Depreciation for Obsolescence of Track

Both parties agree that the proper accounting rule on the propriety of the deferred charge method of recognizing a loss is that no deferred charge shall be set up except where costs are involved the benefit of which will inure to the future. The PTC claims that the retirement of track to make way for motor buses falls within the above exception to this rule in that certain benefits did inure to the future in the form of savings in maintenance costs, tax loss carry-over benefits and benefits derived from the new bus system. However, it is obvious that these benefits are at most merely incidental, ancillary outgrowths of the track retirement program and have no direct and continuing dependence on a past capital loss.

The PTC claims, however, that the entire undepreciated book costs should not have been provided for in 1956, as directed by the lower court, since the loss was not "reasonably foreseeable" at that time so as to fall within the rule that a loss should be recognized as such

when it is reasonably foreseeable. Notwithstanding PTC's evidence to the contrary, it is nevertheless uncontradicted that by the end of 1956 PTC had made three official unsolicited estimates in rate proceedings and balance sheets of the anticipated track retirement loss, the lowest of which ($7,200,000) both the Trustee and the lower court accepted. In addition, the PTC controller's work papers, which were admitted in evidence, reflect the careful planning of the PTC and the ease with which an estimate of the loss could have been recognized in 1956. Furthermore, by the end of 1956, although only half of the conversion program was actually completed, the new buses were being used on 80% of all the routes which were ultimately converted. From these facts it is evident that the retirement loss in question was reasonably foreseeable by the end of 1956.

We are in accord with the lower court's result that the $7,200,000 track retirement loss should have been recognized and taken by the end of 1956, and that, therefore, the annual $1,200,000 extraordinary appropriations to the reserve for depreciation of track for both 1957 and 1958 were in contravention of the standards contained in the Trust Indenture.

## II. Amortization of Franchise Paving

These costs represent money expended by predecessor companies at a cost of $15,000,000 to pave and repave streets in order to install and maintain tracks. They were recapitalized by PTC in the amount of $7,500,000 in 1940 under a reorganization plan. When the retirement program was conceived in the mid-1950's, the PTC continued its annual 2% "amortization" of this item and reflected the impact of the retirement program by "amortizing," through a separate account an additional sum of $300,000 per year for the two years in question.

In a 1953 rate proceeding the Pa. PUC ruled that franchise paving costs should be excluded as a rate base asset. Thereafter, since these "intangible assets," as PTC terms them, no longer contributed to the income of PTC, they were no longer amortizable because at that time it was reasonably foreseeable that the loss had occurred and, since no benefits inured to the future, the entire loss should have been recognized then.

PTC cites authority for the principle that merely because an asset is not included in the company's valuation for rate-making purposes does not necessitate its write-off from the company's books. This may be true, but PTC still does not show that this "intangible asset" continued to benefit the PTC in any manner after 1953. Consequently, since the "asset" was stripped of its only corporate benefit by having been removed from the rate base in 1953 it ceased to be an asset of the corporation at that time.

Thus, we are in accord with the lower court's result that the PTC's amortization of franchise paving in 1957 and 1958 was not in accordance with "sound accounting practice."

### III. City of Philadelphia Repaving Charges

Under a set of agreements between the City of Philadelphia and the PTC, the City agreed to repave the streets after PTC's abandonment of the tracks. Under the last of these agreements, which resulted in a debt of $843,112 PTC charged $177,000 against income in 1956 and the balance of $666,112 in 1957.

In rate proceedings held by the Pa. PUC the PTC was given permission to amortize this latter charge of $666,112 over a period of five years or at the rate of $133,300 per year. Thus it is obvious that the benefits of this 1957 expense item inured to the future as a result of its inclusion as a rate item for a period of

five years. PTC, however, chose to completely charge off this $666,112 in 1957, a practice which is strangely inconsistent not only with the proper application of the rule governing the propriety of using the deferred charge method, but with the PTC's handling of the track depreciation and franchise paving items. Thus complete charge-off of the $666,112 by the PTC in 1957 was erroneous. The sum should have been spread out evenly over a five year period.

Hence, the lower court's disposition of these three accounting items is affirmed. However, by the application of proper accounting principles it may develop that the PTC sustained a net loss for the year 1956 which would have relieved it of its obligation to make payment of the additional 3% income-interest to the holders of the bonds for that year. For that purpose and for the determination of that problem we are remanding this case to the court below for further proceedings. If that court finds that a net loss was sustained in 1956 then it should make provision so that no income-interest is paid for 1957 except to those bondholders who certify to the Trustee and the PTC that they had not held their bonds and received income-interest thereon for the year 1956.

The lower court awarded the Trustee $127,507 in costs relying on Article XIII, Section 1 of the Trust Indenture which binds the PTC to "reimburse the Trustee for all its expenditures, and to indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder." Of this amount, $75,000 represented attorneys fees.

The settled law of this Commonwealth is that attorney's fees are recoverable from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties. We think the broad scope of reimbursement provided by the general provision of the Indenture is sufficiently specific to include attorney's

fees. Accordingly, the award of costs and attorneys fees by the lower court was proper.

The judgment of the lower court is modified, and as modified, is affirmed and remanded to that court for further proceedings not inconsistent with this opinion.