**Fidelity-Philadelphia Trust Company
v. Philadelphia Transportation
Company (No. 2)**

*Ernest R. von Starck, Donald A. Scott* and *Morgan, Lewis & Bockius,* for plaintiff.

*Hamilton C. Connor, Jr., Peter Platten, Allan F. Ayers, Jr., Ballard, Spahr, Andrews & Ingersoll* and *Hodges, Reavis, McGrath & Downey,* for defendant.

WEINROTT, J., February 1, 1962.—When this action was originally before this court, we found that defendant was liable to plaintiff trustee for the payment of three percent income interest on defendant's Consolidated Mortgage Three to Six Percent Bonds, Series A, due January 1, 2039, for the years 1957 and 1958 under the terms of the trust indenture securing the bonds: Fidelity-Philadelphia Trust Co. v. Philadelphia Transportation Co., 22 D. & C. 2d 181 (1960). Thereafter, defendant's exceptions to our decision were dismissed by the court en banc and the Supreme Court of Penn-

sylvania affirmed with respect to the accounting issues raised: Fidelity-Philadelphia Trust Company v. Philadelphia Transportation Company, 404 Pa. 541 (1961). However, in response to an argument first raised by defendant in its exceptions, the Supreme Court remanded the case to this court for the following determination:

". . . However, by the application of proper accounting principles it may develop that the PTC sustained a net loss for the year 1956 which would have relieved it of its obligation to make payment of the additional 3% income-interest to the holders of the bonds for that year. For that purpose and for the determination of that problem we are remanding this case to the court below for further proceedings. If that court finds that a net loss was sustained in 1956 then it should make provision so that no income-interest is paid for 1957 except to those bondholders who certify to the Trustee and the PTC that they had not held their bonds and received income interest thereon for the year 1956."

A hearing was held for this purpose by this court, sitting without a jury, and upon full consideration of the testimony and evidence presented, we make the following additional:

### Findings of Fact

1. Defendant's estimate at the end of 1955 of the anticipated loss from the retirement of track was $4,-800,000, which sum should have been provided for prior to the year 1956 under the accounting principles set forth in our prior decision since it was then a reasonably foreseeable loss.

2. The proper amount which should have been charged against income for the year 1956 for retirement of track was the sum of $2,400,000, being the difference between the estimate of $7,200,000 at the end

of 1956 adopted in our prior opinion, and the estimate of $4,800,000 at the end of 1955.

3. In accordance with the findings respecting "franchise paving" in our prior opinion, the charges against income for 1956 of $139,409 and $300,000 for amortization of franchise paving were improper and not in accord with sound accounting practice.

4. There was sufficient net income for the year 1956, determined in accordance with sound accounting practice, to pay full three percent income interest of $723,-642.

<em>Discussion</em>

Our prior decision describes the background of this action and sets forth the principles which we found govern defendant's accounting under the terms of the trust indenture. Pertinent to the issue presented on this remand is the principle that provision for the track abandonment losses should have been made as soon as the loss could be foreseen and the amount thereof estimated and the finding that franchise paving became worthless in 1953 and amortization of this item thereafter was improper.

Defendant determined for the year 1956 by its own accounting methods that there was net income of $1,-738,547 available for the payment of income interest and, therefore, paid the full three percent additional interest in an amount of $723,642. This determination included an extraordinary item for the track abandonment losses of $2,200,000, and two charges for amortization of franchise paving in the total sum of $439,409. The remand order directs us to determine whether, by the application of sound accounting practice, the net income would be reduced to the extent that this interest should not have been paid.

Defendant contends that the proper charge against 1956 income for track abandonment losses should be

$5,800,000. It did not present any other expert opinion to support this claim, but relied instead upon statements in the testimony of one of plaintiff's experts at the prior hearing. This testimony was to the effect that, in addition to the $1,394,000 actually charged against 1955 income by defendant, $5,800,000 should have been charged by the end of 1956 in order to reach a total provision for track losses of $7,200,000 at that time. The issue at the first trial was only the total amount of the loss which should have been recognized prior to the years then in question, 1957 and 1958, and not what portions of this total amount should have been allocated against income for 1956 and prior years. The witness expressly stated in his testimony that he had not made the necessary study to determine this allocation. At the instant hearing, when 1956 income was in issue, he stated that he had made the additional study necessary to give his opinion on the proper charge for 1956. We find nothing inconsistent in the testimony of this witness, and it was confirmed by another fully competent expert who had not previously testified.

In our prior decision under the accounting principle that provision for losses should be made as soon as they are foreseeable and the amount can be estimated, we accepted defendant's own estimate in its 1956 annual report of the total track losses which should have been provided for prior to 1957. In determining 1956 income, we accept a similar estimate found in defendant's 1955 annual report which states that the modernization program "involves the abandonment of 174 miles of surface track having a depreciated book cost at time of retirement of $4,800,000." The foreseeability of this loss is confirmed by a footnote to the financial statements that conversions from rail to bus operation "are expected to entail further retirements of material amounts in 1956"; and the $4,800,000 estimate is confirmed by comparable figures in a report to defendant's

executive committee by its controller prior to the issuance of the annual report and a memorandum prepared in September 1955 by defendant's planning division. Defendant argues that none of these estimates provides a sound basis for accounting because no agreement had been reached with the City of Philadelphia on the payments to be made for repaving the streets where the track would be abandoned. However, the records of City Council show that agreement on the repaving charges was in fact reached with the responsible city officials prior to the approval and issuance of the 1955 annual report: Journal of the Council of the City of Philadelphia, Vol. I (Jan. 2, 1956-June 21, 1956), Appendix 69.

Accordingly, we find that defendant should have provided for $4,800,000 of the total track losses prior to 1956. The proper charge against income for these losses for 1956 should therefore be $2,400,000, which is the $7,200,000 estimate at the end of 1956 less the $4,800,-000 estimate at the end of 1955.

With respect to the $439,409 of charges for franchise paving, defendant does not contest their elimination under the principles previously established. The net result of these adjustments to accord with sound accounting practice is to increase the amount of net income available for income interest from $1,738,547 to $1,977,952. Accordingly, we find that income interest was properly paid for the year 1956 and defendant is not relieved of its obligation to pay 1957 income interest.

Defendant has taken the position that, if we find that income interest was properly paid for 1956, we should nevertheless then determine the same issue for the year 1955. This we are not permitted to do in view of the restriction expressed in the remand order: Quaker State Oil Refining Co. v. Talbot, 322 Pa. 155 (1936); Brown's Estate, 213 Pa. 604 (1906).

Even without this restriction, we would not be inclined to reopen 1955. Defendant did not raise this "counter-claim", if it may be called such, until counsel filed exceptions to this court's order, and even then the pertinent exception and counsel's subsequent argument in the Supreme Court were limited solely to 1956. Accordingly, it seems unfair to the bondholders to permit the injection by defendant of a still further additional issue three and one-half years after defendant filed its answer and two years after trial. If defendant were permitted to reopen 1955, there is no logical reason why the accounting and the income for each year since the issuance of the bonds in 1940 should not also be redetermined, for the benefit of the bondholders as well as defendant.

### Conclusions of Law

1. For the year 1956 there was sufficient net income determined in accordance with sound accounting practice to pay full three percent income interest to the holders of Consolidated Mortgage Three to Six Percent Bonds, Series A, due January 1, 2039.

2. The only issue properly before this court on the remand is whether income interest was properly paid for the year 1956.

3. Defendant is not relieved of its obligation to pay full three percent income interest for the year 1957 as ordered in the prior decision of this court.

### Order

And now, February 1, 1962, this court finds that defendant, Philadelphia Transportation Company, is not relieved of its obligation to pay to plaintiff, Fidelity-Philadelphia Trust Company, trustee, the sum of $716,-784, income interest for the year 1957, together with interest thereon from July 1, 1958, as ordered in the order of this court entered May 9, 1960.

Defendant is ordered to pay to plaintiff, in further

reimbursement of the expenses it incurred in connection with the instant litigation, such sum as may be agreed upon between the parties. If an amicable agreement cannot be arrived at between the parties, then this court will hear testimony in that regard and will fix a reasonable amount for expenses incident to this remand litigation.